# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.  3:26-cr-00091 |
| v. | ) | |
| | ) | Judge Trauger |
| ZACHARY SWEENEY | ) | |

## MOTION FOR DETENTION

The United States of America, by and through Braden H. Boucek, the United States Attorney for the Middle District of Tennessee, and Kathryn Risinger and Zachary T. Hinkle, Assistant United States Attorneys, respectfully files this memorandum in support of pre-trial detention for defendant Zachary Sweeney ("Sweeney" and "defendant") in this case and advises the Court that at his Initial Appearance in the above-referenced case, the United States will move for pre-trial detention of the defendant pursuant to Title 18, United States Code, Sections 3142(f)(1)(A) and 3142(f)(2)(A) and (B) because he constitutes a danger to the community, a flight risk, and/or will obstruct or attempt to obstruct justice, and/or will engage in or attempt to engage in witness intimidation. The Government moves for a continuance of three business days to hold a detention hearing. In support thereof, the Government would show the following:

## CHARGES

Sweeney is currently charged, via Indictment, with three counts of Sexual Exploitation of a Minor and Attempted Sexual Exploitation of a Minor, under chapter 110, in violation of 18 U.S.C. §§ 2251(a) and (e), and three counts of Receipt of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, under Chapter 110, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b).

**<u>REQUEST FOR DETENTION</u>**

**A. Legal Basis for Detention:**

Pursuant to Title 18, United States Code, Section 3142(f)(1)(A), the Court shall hold a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant or the safety of the community upon a motion by the Government in a case that involves "a crime of violence . . . for which a maximum term of imprisonment of ten years or more is prescribed." Pursuant to 18 U.S.C. § 3156(a)(4)(C), the term "crime of violence," as used in 18 U.S.C. § 3142(f)(1)(A), includes any felony under chapter 109A, 110, or 117. Moreover, pursuant to Title 18, United States Code, Section 3142(f)(2)(A) and (B), the Court shall hold a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant or the safety of the community upon a motion by the Government in a case that involves "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

The Government also submits that – by operation of 18 U.S.C. § 3142(e)(3)(E) – a rebuttable presumption exists that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." The presumption set forth in 18 U.S.C. § 3142(e)(3) places the burden of production on the defendant. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). To overcome that burden, a defendant must present at least some evidence that he/she does not pose a danger to the community or a risk of flight. *Id.* Even when a defendant satisfies that burden, however, the presumption favoring detention does not disappear entirely. *Id.* Rather, the presumption, which "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial," remains a factor to be considered among

those weighed by the district court. *Id.* The government retains the burden of persuasion on the ultimate issue of pretrial detention. *Id.*

A defendant may be detained pending trial if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the Court shall consider: (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence of dangerousness against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b); *Stone*, 608 F.3d at 945. And, when "risk of flight" serves as the basis for detention, the Government must only satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

**B. Factual Basis for Detention:**

Over the past few years, Sweeney has been a subject or target in multiple Federal Bureau of Investigation ("FBI") investigations. As set forth below, FBI agents have learned that Sweeney has an extensive history of allegations of drugging and raping minors; producing, receiving, distributing, and selling child sexual abuse material ("CSAM"); and other violent behavior directed

toward minors, such as encouraging them to engage in self-harm. Sweeney relocated to the Middle District of Tennessee in the summer of 2024. Since that time, FBI Nashville agents have uncovered evidence related to the production, attempted production, and receipt of CSAM from Minor Victim 6 ("MV6"), Minor Victim 7 ("MV7"), and Minor Victim 8 ("MV8") during the summer of 2025.

1. <u>Nihilistic Violent Extremists:</u>

Sweeney has an extensive history of engaging in criminal conduct related to the exploitation of minors, including conduct related to Nihilistic Violent Extremists ("NVEs"). NVEs are individuals who engage in criminal conduct within the United States and abroad, in furtherance of political, social, or religious goals that derive primarily from a hatred of society at large and a desire to bring about its collapse by sowing indiscriminate chaos, destruction, and social instability. NVEs work individually or as part of a network with these goals of destroying civilized society through the corruption and exploitation of vulnerable populations, which often include minors.[1]

NVEs, both individually and as a network, systematically and methodically target vulnerable populations across the United States and the globe. NVEs frequently use social media communication platforms to connect with individuals and desensitize them to violence by, among other things, breaking down societal norms regarding engaging in violence, normalizing the possession, production, and sharing of CSAM and gore material, and otherwise corrupting and grooming those individuals towards committing future acts of violence.

Those individuals are targeted online, often through synchronized group chats. NVEs frequently conduct coordinated extortions of individuals by blackmailing them so they comply with the demands of the network. These demands vary and include, but are not limited to, self-

---

[1] NVEs adhere to an ideology herein defined as Nihilistic Violent Extremism ("NVE").

mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings and others, acts of violence, threats of violence, suicide, and murder.

Historically, NVEs systematically targeted vulnerable individuals by grooming, extorting, coercing, and otherwise compelling through force, or the threat of force, the victims to mutilate themselves or do violence, or threaten violence, to others and either film or photograph such activity. The members of the network have edited compilation photographs or videos of targeted individuals, shared the photographs and videos on social media platforms for several reasons, including to gain notoriety amongst members of the network, and spread fear among those targeted individuals for the purpose of accelerating the downfall of society and otherwise achieving the goals of the NVEs.

NVEs networks have adopted various monikers to identify themselves. The networks have changed names over time, which has led to the creation of related networks. Although the networks change names and use a variety of different social media platforms, the core members and goals remain consistent and align with the overarching threat of NVE.

"764" and related groups ("764") are NVEs who engage in criminal conduct within the United States and engage with other extremists abroad. The 764 network's accelerationist goals include social unrest and the downfall of the current world order, including the United States Government. Members of 764 work in concert with one another towards a common purpose of destroying civilized society through the corruption and exploitation of vulnerable populations, including minors.

Investigations into Sweeney by the FBI revealed multiple allegations of victimization of minors by Sweeney from at least 2022 until 2025. Information taken from victim interviews, source reporting, legal process returns, and other predicated case subjects indicates that Sweeney

has on numerous occasions, groomed and coerced minors into producing Child Sexual Abuse Material ("CSAM"), distributed and in some cases sold this material, and traveled to meet with minor victims during which time he is alleged to have drugged, raped, and filmed sexual acts with the minors. Additionally, Sweeney has committed these acts for, and engaged in others consistent with, the group 764 and its affiliates. These include coercing minors to self-harm, coercing them to make fan signs,[2] sending them drugs to take and stream themselves committing sexual acts and acts of self-harm online, and making threats of swatting[3] and doxxing.

 2. <u>Allegations Regarding Prior Victims:</u>

In 2023, during prior interviews with FBI New York agents and a Child and Adolescent Forensic Interviewer ("CAFI"), Minor Victim 1 ("MV1"), who was known by the moniker "Jellysquish" on various platforms, including a particular Discord server, provided information about Sweeney who used the moniker "spinal torture" and has been known to attempt to groom young females on the server. MV1 stated that Sweeney tried to groom her when she was 14 or 15 years old but MV1 blocked him. MV1 reported that Sweeney targeted other girls as well. MV1 further reported that Sweeney routinely printed out screen shot images of girls and filmed himself masturbating to these images and then posted those videos in the Discord servers. MV1 identified Sweeney's other username as variations of the moniker "WumWum," including "Wom Wom" and "WMWM." Sweeney was aware that MV1 was 14 years old during these interactions.

---

[2] A "fan sign" or "cut sign" is a form of self-mutilation/self-injury in which one individual requests that another individual cut different words, images, or symbols into their body. This process and the result are often captured via photo/video and shared or sold online. The function of the sign is generally a tribute or reference to the requesting individual and/or that individual's moniker.

[3] Swatting is a hoaxed criminal act in which an individual contacts law enforcement making a false report of a serious and ongoing violent crime (e.g., hostage situation) being committed by a victim or where the victim is located, with the intention of provoking an aggressive law enforcement response.

Similarly, in 2023 and 2024, FBI agents from New York and/or St. Louis interviewed Minor Victim 2 ("MV2"), who was known by the moniker "LQ" on various platforms. MV2 described being part of online Discord servers that consisted of underage females struggling with mental health issues, particularly self-harm. MV2 explained that these servers also include older males who target these underage females due to their mental illness and because these underage females are impressionable and will do what the older males tell them to do. MV2 reported she met Sweeney on Discord when he was using the username "Wom Wom" and reported him for distributing CSAM and engaging in sexual acts with minors.

When she began interacting with Sweeney, MV2 was around age 16 or 17. Sweeney requested sexual images and videos of her and convinced her to make fan signs, specifically directing her to cut or carve "WumWum" into herself or use her blood to write it on herself. MV2 reported that Sweeney was part of a group of people she described as friends of his in "the Com."[4] This group collected CSAM and shared the material amongst each other. In these servers, MV2 participated in virtual self-harm group video calls with members of the server in which she would do a variety of degrading things to herself for the members of the server. Some of these things included cutting herself, drinking toilet water, and smearing blood all over herself while on live stream. She did these activities while she was naked and members of the group, including Sweeney, would record videos of her actions. MV2 was aware of other underage females that Sweeney had victimized and of whom he possessed "collections" of nudes and blackmail material. Sweeney

---

[4] The Com (a/k/a The Community) is a loose decentralized cybercriminal ecosystem consisting of threat actors focusing on violence as a service to include nihilistic extremism, doxxing, swatting, extortion in various forms, CSAM, fraud, crypto theft, and self- and other-harm activities and crimes.

occasionally shared his screen with her and showed her these "collections," including files with folders that were identified by the username of the alleged underage female victim.

MV2 reported she had a sexual relationship with Sweeney when she was 17 in or around October 2022 wherein Sweeney traveled to New York to meet her. Approximately ten days after being interviewed by St. Louis FBI Agents in 2024, MV2 died of an overdose. During April 2025, the FBI interviewed J.C., an individual who was arrested by the FBI on April 3, 2025, for CSAM-related offenses. During that interview, J.C. substantiated MV2's allegation that Sweeney had met MV2 in New York, raped her, and streamed the rape online. J.C. further reported that Sweeney had several victims.

On September 20, 2024, FBI National Threat Operations Center ("NTOC") received a call from an adult female victim ("AV1") who reported that on or about May 10, 2024, when AV1 was 19-years-old, Sweeney had traveled to Indiana to see her. During this trip, she had a glass of wine and lost several hours of her memory during which time Sweeney raped her, filmed the rape, and shared the video via Instagram and Snapchat. AV1 knew this happened because another individual who had observed the videos advised her that Sweeney had shared the videos via social media. During an interview with FBI St. Louis agents, AV1 confirmed the facts of the report and provided further information. AV1 explained that she met Sweeney online through Discord when she was 16 or 17 years old. She reported that Sweeney groomed her and she knew him as "Wum" online. AV1 also reported that she was concerned that Sweeney would sell the video of him raping her and that she did not have access to this video.

AV1 also clarified that she met with Sweeney twice in person, once on or about October 12, 2023, when she spent the night with Sweeney at an AirBnB near a hospital in Richmond, Indiana, and once on or about May 10, 2024, at another AirBnB in Richmond. During the first

interaction, AV1 remembered that Sweeney gave her a "cocktail of drugs," including ketamine, and that she felt "paralyzed." And during the second interaction, she did not recall anything after having a glass of wine. AirBnB records confirm Sweeney traveled to Richmond, Indiana, for two nights beginning on October 18, 2023, and then again for one night beginning on May 10, 2024. AV1 also told her interviewers that she believed that Sweeney had filmed himself raping her and later learned that there was a video of the rape after chatting online with an associate of Sweeney's named "Samurai." During a chat interaction with Sweeney, AV1 confronted Sweeney about recording her, and he acknowledged that he had filmed AV1 and shared the video with others.

3.  Cybertips Related to Sweeney and FBI St. Louis Search Warrant:

On July 11, 2023, Meta sent Cybertipline Report 166126779 to NCMEC regarding potential CSAM that was received by members of an Instagram group chat named "Kitty Kat Klub," one of whom was identified as Sweeney through certain identifiers. A review of this file by FBI Nashville agents revealed the file contained CSAM—an approximately 13-second color video with the focal point of the video being the genital area of what appears to be a nude, toddler-aged female lying on her back on top of what appears to be an adult white female. What appears to be a toddler-aged male then uses his tongue to touch the toddler-aged female's clitoris and labia and another toddler-aged female appears to put her mouth on the other toddler-aged female's mouth.

On July 16, 2023, Meta sent Cybertipline Report 166478799 to NCMEC regarding potential CSAM that was received by members of an Instagram group chat named "vores group," one of whom was identified as Sweeney through certain identifiers. A law enforcement officer listed as the point of contact for the tip provided the following description for it:

> This video file is approximately one minute and twenty-four seconds in length. In this video, an adult male while standing is penetrating a female child's mouth with his erect penis. The female child is approximately 9 - 12 years of age based on my training and experience. The video beings with the child's mouth being penetrated

by the erect penis. At approximately :27 seconds, the male uses his right hand behind the child's head to penetrate her mouth faster. At approximately :40 seconds, the child begins to gag and cough and removes the penis from her mouth. At approximately :53 seconds, the adult male's erect penis penetrates the child's mouth again and continues for the duration of the video.

A review of this file by FBI Nashville agents confirmed it was CSAM.

On September 22, 2023, FBI St. Louis executed a residential search warrant for the St. Louis residence of Sweeney during which 54 items of evidence were seized. Digital forensic examination of some of these items yielded a total of 99 possible CSAM images/videos. However, many of these seized electronic devices were encrypted or had passcodes that prevented examination and therefore were not searched.

4.  <u>Middle District of Tennessee Charged Victims—Minor Victims 6, 7, and 8:</u>

During July 2025, Sweeney engaged in communications with MV7 over Discord. At the time of the communications, MV7 resided in Georgia with her parents. During those communications, MV7 advised that Sweeney liked to engage in age play where he asked females to pretend as though they were toddlers, would ask MV7 to undress on camera for him, and solicited sexual images of MV7. Sweeney would also send videos of himself masturbating to MV7. Sweeney once told MV7 that he wanted to "cum in [her] four-year-old pussy." After receiving CSAM from MV7, Sweeney traveled from the Middle District of Tennessee to Georgia where he met with MV7 and engaged in sexual intercourse with her in the backseat of his truck. During the trip, MV7 took a photograph of Sweeney holding MV7's Nemo lunchbox, which she had packed with food for Sweeney.



In late July 2025, Sweeney engaged in communications with MV6 over Discord, paying her for CSAM she produced. Based upon the communications between MV6 and Sweeney, MV6 was worried Sweeney would not pay her for the CSAM. When she asked Sweeney to send the payment first, the conversations indicate that Sweeney advised her to send the CSAM first, but with part of the image blurred, which she did. Subsequently, Sweeney paid her for the image, which she then resent in a non-blurred state. MV6 confirmed the images she sent to Sweeney were of her.

Finally, during the summer of 2025, Sweeney engaged in communications with MV8 over Discord. Like MV6, Sweeney paid MV8 for images of CSAM. MV8 confirmed that the CSAM images recovered from the chats were of her, but advised she did not recall sending the images to anyone.

## C. Request for Detention:

The Government submits that following any hearing in this case, the factors to be considered by this Court – (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence of

11

dangerousness against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release – weigh in favor of the Government and the Government will have presented, by clear and convincing evidence, that the defendant poses a danger to the community that cannot be mitigated by the Court's imposition of conditions or combination of conditions of release, and by a preponderance of the evidence, that the defendants pose a flight risk. Furthermore, there is a serious risk the defendant will obstruct or attempt to obstruct justice and/or will engage in or attempt to engage in witness intimidation.

## **CONCLUSION**

The Government respectfully requests that the Court hold a detention hearing in the above-referenced case, and following any such hearing, detain the defendant pending trial.

Respectfully submitted,

BRADEN H. BOUCEK
United States Attorney
Middle District of Tennessee

By:     /s/ Kathryn Risinger
KATHRYN RISINGER
ZACHARY T. HINKLE
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Phone:  615-736-5151

12